OPINION
{¶ 1} Defendant-appellant Joseph Gaines appeals from his conviction and sentence in the Stark County Court of Common Pleas on one count of rape, a felony of the first degree in violation of R.C. 2907.02. He further appeals his adjudication as a sexual predator. The plaintiff-appellee is the State of Ohio.
 {¶ 2} On October 25, 1998, thirteen year old Amanda Healy was visiting the apartment of her friend Rebecca Shank. Amanda lived in an apartment downstairs from Shank with her mother, her sister, and her mother's boyfriend, John Lescallet.
 {¶ 3} Ms. Healy knew appellant as a person who stayed at Shank's apartment off and on. She knew that Ms. Shank worked with appellant at Labor Ready. Ms. Healy sometimes stayed at Shank's apartment because her mother was never home and she did not want to stay in their apartment alone.
 {¶ 4} On October 25, 1998 around 8:30 a.m. Amanda Healy was sleeping on the couch in Shank's apartment when she was awaked by appellant poking her with his fingers. Appellant was sitting on the coffee table beside the couch completely nude. As Ms. Healy awoke, appellant ask her "Why [she] told on him." This referred to an incident which occurred the previous day; Amanda told Ms. Shank that appellant had been walking around the apartment naked. When she learned of this, Ms. Shank told Amanda that she wouldn't let appellant back into the apartment.
 {¶ 5} Appellant said Ms. Shank had told him about the incident and further told him that Amanda was the person who told her about it. Amanda tried to get up from the couch, but appellant pushed her back down. Appellant tried to place a pillow over Amanda's face. Appellant told Amanda to remove the gray sweatpants she was wearing; when she refused, he began to pull them off of her. Amanda told appellant that she was on her period as he pulled her pants off. Appellant sat on the couch and told Amanda to sit on top of him. Appellant then placed his penis inside Amanda's vagina. Although Amanda struggled initially, at some point she "gave up, pretty much". Ms. Healy felt sick and hurt badly; she was crying and told appellant that she was in pain, to which he had no response.
 {¶ 6} Amanda did not know what made appellant stop, but he suddenly stopped and told her to get up. Amanda grabbed her clothing and ran to the bathroom and locked the door. At that point she noticed that she was bleeding, but attributed the blood to her period.
 {¶ 7} Appellant kicked the bathroom door open and stood in the doorway. He stated he was leaving for California and that he had left a note for Ms. Shank. The note instructed Ms. Shank to page him when she came home from work. Appellant had a steak knife in his hand and told Amanda that he would kill her, her mom and her sister if she told anyone what he had done. Appellant walked away and Amanda shut the bathroom door. Amanda heard the appellant leave the apartment and watched from a window as he walked away from the building.
 {¶ 8} Ms. Healy immediately left the apartment and went downstairs to her mother's apartment where John Lescallet, her mom's boyfriend, was at home. Amanda went straight to her room, and sat on her bed, crying. Mr. Lescallet observed that Amanda was very upset and was shaking and crying. He asked her what was wrong and Ms. Healy told him she had been raped by "Joe." Ms. Lescallet called the police and left the building to look for the appellant. Although Mr. Lescallet looked for the appellant for several hours, he did not find him. Later that day, however, appellant telephoned Amanda's mother's apartment and spoke to Mr. Lescallet. Appellant stated he was sorry for what he had done. Mr. Lescallet asked appellant why he had done it and where he was now, but appellant did not answer either question.
 {¶ 9} The police had called Rebecca Shank at work and told her what happened at her apartment. When she returned home she discovered a note on the couch left for her by appellant. The noted stated, "Becky, I'm on my way to California, page me when you get a chance." The note also contained appellant's pager number written on the note by Ms. Shank at the request of the police. Ms. Shank paged appellant but he didn't return her calls. Eventually Ms. Shank did speak to appellant by telephone and asked him whether he raped Amanda; appellant stated that he did rape Amanda, but did not tell Ms. Shank why he had done it.
 {¶ 10} The police escorted Ms. Healy to Aultman Hospital where she was examined and a rape kit was prepared. Carol Maury, an E.R. nurse, talked with Amanda and prepared a history of what brought Amanda to the hospital. Nurse Maury's notes revealed that Amanda stated that assailant came into the bedroom where she was sleeping and threatened to strangle her if she did not submit to his sexual advances, vagina penetration occurred and Amanda was uncertain whether the assailant ejaculated. Nurse Maury's notes also stated that Amanda's period had begun on the morning of the day of the attack. Further Ms. Healy had never had sexual intercourse before.
 {¶ 11} Emergency Room Physician Dr. Mark Hatcher examined Ms. Healy. Dr. Hatcher's notes indicate that Amanda reported being awakened by her assailant, who told her to be quiet and take off her clothes or he would kill her, and then forced her to have vagina intercourse. Dr. Hatcher performed a head-two-toe examination, which included a pelvic examine with a speculum. The purpose of the examination was to look for trauma to genitalia and to acquire specimens of the evidence for analysis. During the pelvic examination, Dr. Hatcher noted a torn hymen consistent with forced penetration. He also observed active bleeding and blood present in the vaginal vault. Dr. Hatcher explained that hymen is tissue around the vagina opening which is intact in females who had not had sexual intercourse; in Amanda's case the hymen was lacerated or torn.
 {¶ 12} Detective Richard Schaefer of the Canton Police Department testified about the eventual apprehension of appellant. Detective Schaefer began working on the case in June or July 1999 and his goal was to find appellant, who had never been located. In October, 2002, Detective Schaefer learned that appellant might be in Miami Florida but he had no address or further information. In fact Detective Schaefer was not aware that appellant was back in Ohio until the appellant was arrested on the outstanding warrant while he was at the Bureau of Motor Vehicles.
 {¶ 13} Crime lab personnel testified about the results of tests performed on physical evidence from the case. The rape kit obtained at Aultman Hospital contained vaginal swabs from Amanda Healy which tested negative for the presence of semen; the swabs did test positive for the presence of blood.
 {¶ 14} Evidence collected also included a pair of gray sweatpants that Amanda wore to the hospital. Tests on these pants revealed a small amount of semen on the exterior lower right leg. Tests also confirmed the presence of blood on the exterior crotch area, the exterior left buttocks, the interior right front waistband, and the interior crotch and lower back area of the pants. A single pubic hair was located in the interior of the left leg. The pubic hair did not match Ms. Healy's. The semen stain on the sweatpants contained DNA from more than one person. Amanda Healy was excluded as one source of that DNA. Appellant however could not be excluded as one source of the DNA. No DNA results were obtained from the pubic hair.
 {¶ 15} After a trial by jury appellant was found guilty as charged.
 {¶ 16} The trial court held a hearing to determine appellant's sentence and classification. The State called one witness, Detective Richard Schaefer to testify about appellant's criminal record.
 {¶ 17} Appellant's criminal record began in 1999 with a theft offense and went on to include a conviction for kidnapping with a weapon and assault with a weapon in Florida in 2001. The facts of that conviction indicated that appellant approached a woman on a beach, put a knife to her throat, and stated: "You are coming with me". The woman ran, and appellant fled on A.T.V. Appellant was apprehended shortly after the attack and was found in possession of a black utility knife.
 {¶ 18} Detective Schaefer began working on Amanda's case in 1999 along with a companion case in which a victim named Ashley Heck, age 15, was walking near Gatsby's and appellant was across the street from her. Appellant crossed the street, put his arm around Ms. Heck, stuck a box cutter against her side, and said "Come on, we're going for walk." Appellant then took Ms. Heck into an area of trees near The Timken Company and raped her. Evidence in that case was submitted to crime lab for analysis, and the semen stain on the crotch of Ms. Heck's boxer shorts matched the DNA sample obtain from the appellant.
 {¶ 19} Detective Schaefer was contacted by law enforcement personnel from the State of Florida in connection with another case. In this case, Florida police developed the appellant as a suspect because of a "hit" in October, 2002 in the National CODIS DNA Data Bank. The facts of that case indicate that a married couple was on a beach when approached by appellant, who was holding a knife or gun covered by a towel. Appellant walked the couple to an abandoned building, and forced the husband to watch as he raped the wife. Appellant then told the couple to walk away, and threatened that he would shoot them if they turned around. Appellant's DNA was present in that case hence the CODIS match.
 {¶ 20} At the time of the hearing no criminal charges had yet been filed in Ashley Heck's case or the Florida married couple's case.
 {¶ 21} The trial court determined appellant to be a sexual predator and sentenced him to a maximum prison term of ten years. It is from this conviction and sentence and classification as a sexual predator that appellant has filed the instant appeal raising the following four assignments of error for our consideration:
 {¶ 22} "I. THE TRIAL COURT ERRED WHEN OVERRULING THE APPELLANT, MR. JOSEPH GAINES' MOTION FOR CRIM. R. 29 ACQUITTAL AS THE STATE HAD FAILED TO PRESENT SUFFICIENT EVIDENCE TO SUSTAIN A CONVICTION FOR RAPE.
 {¶ 23} "II. THE JURY VERDICT FINDING THE APPELLANT, MR. JOSEPH GAINES GUILTY OF ONE COUNT OF RAPE WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.
 {¶ 24} "III. THE TRIAL COURT ERRED TO THE PREJUDICE OF THE APPELLANT JOSEPH GAINES, WHEN SENTENCING HIM TO THE MAXIMUM SENTENCE.
 {¶ 25} "IV. THE TRIAL COURT ERRED TO THE PREJUDICE OF THE APPELLANT JOSEPH GAINES, WHEN FINDING HIM TO BE A SEXUAL PREDATOR, WHEN SUCH FINDING WAS NOT SUPPORTED BY CLEAR AND CONVINCING EVIDENCE."
 I. II. {¶ 26} In his First Assignment of Error appellant claims the trial court erred in failing to grant his Crim.R. 29 motion to acquit on the charge of rape. In his Second Assignment of Error, appellant contends that the verdict is against the manifest weight of the evidence. Appellant has argued these issues together in his brief. We will review the two assignments of error together.
 {¶ 27} Crim.R. 29 governs motion for acquittal. Subsection (A) states the following:
 {¶ 28} "The court on motion of a defendant or on its own motion, after the evidence on either side is closed, shall order the entry of a judgment of acquittal of one or more offenses charged in the indictment, information, or complaint, if the evidence is insufficient to sustain a conviction of such offense or offenses. The court may not reserve ruling on a motion for judgment of acquittal made at the close of the state's case."
 {¶ 29} The standard to be employed by a trial court in determining a Crim.R. 29 motion is set out in State v.Bridgeman (1978), 55 Ohio St.2d 261, 381 N.E.2d 184, syllabus:
 {¶ 30} "Pursuant to Crim.R. 29(A), a court shall not order an entry of judgment of acquittal if the evidence is such that reasonable minds can reach different conclusions as to whether each material element of a crime has been proved beyond a reasonable doubt."
 {¶ 31} Our standard of reviewing a claim a verdict was not supported by sufficient evidence is to examine the evidence presented at trial to determine whether the evidence, if believed, would convince the average mind of the accused's guilt beyond a reasonable doubt. The relevant inquiry is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt,State v. Jenks (1991), 61 Ohio St. 3d 259.
 {¶ 32} The Supreme Court has explained the distinction between claims of sufficiency of the evidence and manifest weight. Sufficiency of the evidence is a question for the trial court to determine whether the State has met its burden to produce evidence on each element of the crime charged, sufficient for the matter to be submitted to the jury.
 {¶ 33} Manifest weight of the evidence claims concern the amount of evidence offered in support of one side of the case, and is a jury question. We must determine whether the jury, in interpreting the facts, so lost its way that its verdict results in a manifest miscarriage of justice, State v. Thompkins
(1997), 78 Ohio St. 3d 387, citations deleted. On review for manifest weight, a reviewing court is "to examine the entire record, weigh the evidence and all reasonable inferences, consider the credibility of the witnesses and determine whether in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the judgment must be reversed. The discretionary power to grant a new hearing should be exercised only in the exceptional case in which the evidence weighs heavily against the judgment."State v. Thompkins, 78 Ohio St.3d 380, 387, 1997-Ohio-52, citing State v. Martin (1983), 20 Ohio App.3d 172, 175. Because the trier of fact is in a better position to observe the witnesses' demeanor and weigh their credibility, the weight of the evidence and the credibility of the witnesses are primarily for the trier of fact. State v. DeHass (1967),10 Ohio St.2d 230, syllabus 1.
 {¶ 34} In Seasons Coal Co. v. Cleveland (1984),10 Ohio St.3d 77, 81, 461 N.E.2d 1273, the Ohio Supreme Court explained: "[a] reviewing court should not reverse a decision simply because it holds a different opinion concerning the credibility of the witnesses and evidence submitted before the trial court. A finding of an error in law is a legitimate ground for reversal, but a difference of opinion on credibility of witnesses and evidence is not." See, also State v. DeHass (1967),10 Ohio St.2d 230, syllabus 1.
 {¶ 35} In State v. Thompkins (1997), 78 Ohio St.3d 380,678 N.E.2d 541, the Ohio Supreme Court held "[t]o reverse a judgment of a trial court on the basis that the judgment is not sustained by sufficient evidence, only a concurring majority of a panel of a court of appeals reviewing the judgment is necessary." Id., paragraph three of the syllabus. However, to "reverse a judgment of a trial court on the weight of the evidence, when the judgment results from a trial by jury, a unanimous concurrence of all three judges on the court of appeals panel reviewing the case is required." Id., paragraph four of the syllabus; State v. Miller
(2002), 96 Ohio St.3d 384, 2002-Ohio-4931 at ¶ 38,775 N.E.2d 498.
 {¶ 36} To find appellant guilty of rape, as charged in appellant's case, the jury would have to find that appellant engaged in sexual conduct with another by purposely compelling that other person by force or threat of force. R.C. 2907.02(A) (2). "Sexual conduct" is defined to include "vaginal intercourse between a male and female; anal intercourse, fellatio, and cunnilingus between persons regardless of sex; and, without privilege to do so, the insertion, however slight, of any part of the body or any instrument, apparatus, or other object into the vaginal or anal cavity of another. Penetration, however slight, is sufficient to complete vaginal or anal intercourse." R.C.2907.01(A).
 {¶ 37} Appellant's arguments center upon the credibility of the witnesses and a lack of a more through police investigation.
 {¶ 38} Amanda Healy testified that appellant attempted to place a pillow over her face and told her to remove her grey sweatpants. (1T at 126-128; 129). When she refused to disrobe, appellant pulled off her pants. (Id.). Appellant told Amanda to sit on top of him, and appellant placed his penis inside her vagina. (Id.). After appellant suddenly halted his attack, Amanda locked herself in the bathroom. (Id. at 128-29). Appellant kicked down the door and told her if she told anyone what had occurred he would kill her, her mother and sister. (Id. at 129-30). Appellant had a steak knife in his hand when he made the statements. (Id.).
 {¶ 39} John Lescallet testified that appellant telephoned him and apologized for what he had done. (Id. at 170-71). Appellant eventually admitted to Rebecca Shank that he had raped Amanda. (Id. at 189-92).
 {¶ 40} Dr. Mark Hatcher testified that he examined Amanda and found that she had a torn hymen consistent with forced sexual trauma. (Id. at 241-44). Dr. Hatcher further observed bleeding and blood present in the vaginal vault. (Id.).
 {¶ 41} Appellant argued that the DNA evidence was inconclusive and that Amanda's statement to the hospital personnel was inconsistent concerning what room the assault had occurred, whether appellant had a knife and whether appellant had tried to strangle her. Appellant further argues that the police did not investigate the crime scene or attempt to obtain telephone records to verify that appellant had telephoned either Lescallet or Shank.
 {¶ 42} The trier of fact, in this case the jury, is vested with the authority to weigh the evidence and assess the credibility of the witnesses. State v. DeHass (1967),10 Ohio St.2d 230, 227 N.E.2d 212, paragraph one of the syllabus. Moreover, the jury was free to believe some, all, or none of the testimony of any witnesses. Domigan v. Gillette (1984),17 Ohio App.3d 228, 229.
 {¶ 43} Viewing this evidence in a light most favorable to the prosecution, we conclude that a reasonable person could have found beyond a reasonable doubt that appellant had committed the crime of rape.
 {¶ 44} We hold, therefore, that the state met its burden of production regarding each element of the crime of rape and, accordingly, there was sufficient evidence to support appellant's conviction.
 {¶ 45} Although appellant presented Amanda's statement to the hospital, the lack of DNA evidence, the less than perfect police investigation and further cross examined Amanda regarding inconsistencies in the statement given by her to the hospital to contradict the State's inference that he engaged in sexual conduct with Amanda by purposely compelling her by force or threat of force, the jury was free to accept or reject any and all of the evidence offered by the appellant and assess the witness's credibility. Although the evidence may have been circumstantial, we note that circumstantial evidence has the same probative value as direct evidence. State v. Jenks (1991),61 Ohio St. 3d 259, 574 N.E. 2d 492.
 {¶ 46} We conclude the jury, in resolving the conflicts in the evidence, did not create a manifest miscarriage of justice so as to require a new trial. Viewing this evidence in a light most favorable to the prosecution, we further conclude that a rational trier of fact could have found beyond a reasonable doubt that appellant engaged in sexual conduct with Amanda by purposely compelling her by force or threat of force. R.C. 2907.02(A) (2). Accordingly, appellant's conviction for rape was not against the manifest weight of the evidence.
 {¶ 47} Appellant's First and Second Assignments of Error are overruled.
 III. {¶ 48} In his Third Assignment of error appellant claims his maximum jail sentence was against the manifest weight of the evidence and contrary to law. We disagree.
 {¶ 49} R.C. 2953.08 governs an appeal of sentence for felony. Subsection (G) (2) states as follows:
 {¶ 50} "The appellate court may increase, reduce, or otherwise modify a sentence that is appealed under this section or may vacate the sentence and remand the matter to the sentencing court for re-sentencing. The appellate court's standard for review is not whether the sentencing court abused its discretion. The appellate court may take any action authorized by this division if it clearly and convincingly finds either of the following:
 {¶ 51} "(a) That the record does not support the sentencing court's findings under division (B) or (D) of section 2929.13, division (E) (4) of section 2929.14, or division (H) of section2929.20 of the Revised Code, whichever, if any, is relevant;
 {¶ 52} "(b) That the sentence is otherwise contrary to law."
 {¶ 53} Clear and convincing evidence is that evidence "which will provide in the mind of the trier of facts a firm belief or conviction as to the facts sought to be established." Cross v.Ledford (1954), 161 Ohio St. 469, paragraph three of the syllabus.
 {¶ 54} Pursuant to R.C. 2929.14(C), a trial court may impose the longest prison term authorized for the offense only upon offenders "who committed the worst forms of the offense, upon offenders who pose the greatest likelihood of committing future crimes, * * * and upon certain repeat violent offenders in accordance with division (D)(2) of this section."
 {¶ 55} This statute is to be read in the disjunctive. See,State v. Comersford (June 3, 1999), Delaware App. No. 98CAA01004, unreported. Accordingly, a maximum sentence may be imposed if the trial court finds any of the above listed categories apply.
 {¶ 56} In State v. Redman, Stark App. No. 2002CA00097, 2003-Ohio-646, this Court held: "While a recitation of the statutory criteria alone may be enough to justify more than the minimum sentence, it is not enough to justify the imposition of the maximum sentence. The trial court also must provide its reasons. As stated in R.C. 2929.19(B)(2)(d): The court shall impose a sentence and shall make a finding that gives its reasons for selecting the sentence imposed in any of the following circumstances:
 {¶ 57} "(d) If the sentence is for one offense and it imposes a prison term for the offense that is the maximum prison term allowed for that offense by division (A) of section 2929.14 of the Revised Code, its reasons for imposing the maximum prison term."
 {¶ 58} Thus, a trial court has discretion to impose a maximum sentence if it determines one of the factors listed in R.C.2929.14(C) exists, and it explains its reasons for imposing a maximum sentence as required by R.C. 2929.19(B)(2)(d).
 {¶ 59} Appellant claims the record does not support any of the factors listed in R.C. 2929.14(C). We disagree with this characterization of the trial court's sentence.
 {¶ 60} The trial court noted that at the time of the offense, the victim was thirteen years old. (3T. at 426). The court further noted that "[y]ou could see that she is still traumatized significantly . . . He knew her. He took advantage of her . . . After this offense after he had left the area he committed at least one other offense that he was convicted of and was sentenced to some term of incarceration". (Id.). The trial court further considered evidence that appellant is being investigated in three sexually related crimes in Ohio and Florida involving the use of weapons. (Id. at 427). The trial court specifically found that appellant committed the worst form of the offense and has the greatest likelihood of committing future crimes. (Id. at 428).
 {¶ 61} Based upon the foregoing, we find the trial court provided sufficient reasons for imposing the maximum sentence.
 IV. {¶ 62} In his Fourth Assignment of Error appellant asserts that the trial court's determination that he be classified as a sexual predator was against the manifest weight of the evidence. We disagree.
 {¶ 63} Ohio's sex-offender registration scheme provides for three classes of sex offenders: habitual sex offenders, sexual predators, and sexually oriented offenders. See R.C. 2950.09; see, also, State v. Williams, 88 Ohio St.3d 513, 518, 2000-Ohio 428, 728 N.E.2d 342, certiorari denied sub nom. Suffecool v.Ohio (2000), 531 U.S. 902, 121 S.Ct. 241, 148 L.Ed.2d 173.
 {¶ 64} In State v. Hayden (2002), 96 Ohio St.3d 211,2002-Ohio-4169, 773 N.E.2d 502 the Ohio Supreme Court noted: "R.C. 2950.01(B) defines a `habitual sex offender' as a person who `is convicted of or pleads guilty to a sexually oriented offense' and who `previously has been convicted of or pleaded guilty to one or more sexually oriented offenses.' R.C.2950.01(B) (1) and (2). In the case of an adult, R.C. 2950.01(E) defines a `sexual predator' as a person who `has been convicted of or pleaded guilty to committing a sexually oriented offense and is likely to engage in the future in one or more sexually oriented offenses.' Finally, the least restrictive designation that of a `sexually oriented offender,' is not specifically defined in R.C. Chapter 2950. However, we have explained that a `sexually oriented offender' is a person `who has committed a `sexually oriented offense' as that term is defined in R.C.2950.01(D) but who does not fit the description of either habitual sex offender or sexual predator.' Cook, supra,83 Ohio St.3d at 407, 700 N.E.2d 570; Williams, supra,88 Ohio St.3d at 519, 728 N.E.2d 342". Id. at 213, 2002-Ohio-4169 at ¶ 9,773 N.E.2d at 504.
 {¶ 65} In State v. Cook (1998), 83 Ohio St.3d 404, the Ohio Supreme Court determined that R.C. Chapter 2950 is remedial in nature and not punitive. Traditionally, the courts, including this one, have applied the standard set forth by the Ohio Supreme Court in C.E. Morris Co. v. Foley Constr. Co. (1978),54 Ohio St.2d 279, 8 O.O.3d 261, 376 N.E.2d 578. In C.E. Morris the Ohio Supreme Court announced the standard for reviewing civil judgments as against the weight of the evidence. The court held that "[j]udgments supported by some competent, credible evidence going to all the essential elements of the case will not be reversed by a reviewing court as being against the manifest weight of the evidence." Id. at paragraph one of the syllabus. The civil standard has been applied to the trial court's determination that a particular offender is a sexual predator. See, e.g., State v. Tillery, Cuyahoga App. No. 79166, 2002-Ohio-1587; State v. Childs (2001), 142 Ohio App.3d 389,395, 755 N.E.2d 958; State v. Wilkerson (2000),138 Ohio App.3d 861, 742 N.E.2d 716; State v. Gerhardt, Clark App. No. 00CA0090, 2001-Ohio-1470; State v. Scott, Logan App. No. 8-2000-26, 2001-Ohio-2107; State v. Hood, Washington App. No. 00CA51, 2001-Ohio-2620; State v. Cooper, Muskingum App. No. CT2001-0013, 2001-Ohio-1676; State v. Parsons (Aug. 17, 2001), Huron App. No. H-00-042. Thus "if there is competent, credible evidence to support the factual findings of the trial court, we review only whether, after weighing the evidence and resolving evidentiary conflicts and issues of credibility, the trial court properly applied the governing law to those factual findings".State v. Griggs, 12th Dist. No. CA2001-08-194, 2002-Ohio-4375 at ¶ 5. In Seasons Coal Co. v. Cleveland (1984),10 Ohio St.3d 77, 81, 461 N.E.2d 1273, the Ohio Supreme Court explained: "[a] reviewing court should not reverse a decision simply because it holds a different opinion concerning the credibility of the witnesses and evidence submitted before the trial court. A finding of an error in law is a legitimate ground for reversal, but a difference of opinion on credibility of witnesses and evidence is not." In the case at bar, we find that the trial court properly applied the law to the factual findings.
 {¶ 66} A "sexual predator" is defined as a "person who has been convicted of or pleaded guilty to committing a sexually oriented offense and is likely to engage in the future in one or more sexually oriented offenses." R.C. 2950.01(E); State v.Eppinger (2001), 91 Ohio St.3d 158, 163 2001-Ohio-247,743 N.E.2d 881, 886. There must be clear and convincing evidence that the offender is a "sexual predator" before that predator classification may be applied. R.C. 2950.09(B) (4). Clear and convincing evidence is that evidence "which will provide in the mind of the trier of facts a firm belief or conviction as to the facts sought to be established." Cross v. Ledford (1954),161 Ohio St. 469, 120 N.E.2d 118, paragraph three of the syllabus. While clear and convincing evidence is "more than a mere preponderance" of the evidence, it is less than that which constitutes "beyond a reasonable doubt." State v. Danby (1983),11 Ohio App.3d 38, 41, 463 N.E.2d 47, citing Cross,161 Ohio St. at 477, 120 N.E.2d 118.
 {¶ 67} In State v. Hayden (2002), 96 Ohio St.3d 211,2002-Ohio-4169, 773 N.E.2d 502, the Ohio Supreme Court held; "the Due Process Clauses of the Fourteenth Amendment to the United States Constitution and of Section 16, Article I of the Ohio Constitution do not require a trial court to conduct a hearing to determine whether a defendant is a sexually oriented offender. Instead, according to R.C. Chapter 2950, if a defendant has been convicted of a sexually oriented offense as defined in R.C.2950.01(D) and is neither a habitual sex offender nor a sexual predator, the sexually oriented offender designation attaches as a matter of law. Id. at 215, 2002-Ohio-4169 at ¶ 15,773 N.E.2d at 506. In the case at bar, appellee was convicted of Rape which is a sexually oriented offense. R.C. 2950.01(D) (1) (a). Accordingly, the only issue before the trial court was whether the appellee is likely to engage in the future in one or more sexually oriented offenses.
 {¶ 68} In making the sexual predator determination, the trial court is to examine the factors enumerated in R.C. 2950.09(B) (2), which include the following:
 {¶ 69} "(a) The offender's age;
 {¶ 70} "(b) The offender's prior criminal record regarding all offenses, including, but not limited to, all sexual offenses;
 {¶ 71} "(c) The age of the victim of the sexually oriented offense for which sentence is to be imposed;
 {¶ 72} "(d) Whether the sexually oriented offense for which sentence is to be imposed involved multiple victims;
 {¶ 73} "(e) Whether the offender used drugs or alcohol to impair the victim of the sexually oriented offenses or to prevent the victim from resisting;
 {¶ 74} "(f) If the offender previously has been convicted of or pleaded guilty to any criminal offense, whether the offender completed any sentence imposed for the prior offense, and, if the prior offense was a sex offense or a sexually oriented offense, whether the offender participated in available programs for sexual offenders;
 {¶ 75} "(g) Any mental illness or mental disability of the offender;
 {¶ 76} "(h) The nature of the offender's sexual conduct, sexual contact, or interaction in a sexual context with the victim of the sexually oriented offense and whether the sexual conduct, sexual contact, or interaction in a sexual context was part of a demonstrated pattern of abuse;
 {¶ 77} "(i) Whether the offender, during the commission of the sexually oriented offense for which sentence is to be imposed, displayed cruelty or made one or more threats of cruelty;
 {¶ 78} "(j) Any additional behavioral characteristics that contribute to the offender's conduct." R.C. 2950.09(B) (2).
 {¶ 79} In State v. Eppinger, supra, the Ohio Supreme court set forth the requirements for conducting a sexual predator hearing. Of relevance to the case at bar, the Court noted "[f]inally, the trial court should consider the statutory factors listed in R.C. 2950.09(B)(2), and should discuss on the record the particular evidence and factors upon which it relies in making its determination regarding the likelihood of recidivism. See State v. Thompson, supra. See, also, State v. Russell
(Apr. 8, 1999), Cuyahoga App. No. 73237, unreported, 1999 WL 195657; State v. Casper (June 10, 1999), Cuyahoga App. Nos. 73061, 73064, 73062 and 73063, unreported, 1999 WL 380437". Id. at 166, 743 N.E.2d at 889.
 {¶ 80} In the case at bar, the trial court considered the age of the victim. R.C. 2950.09(B) (2) (b). The trial court further heard evidence that appellant had been convicted in Florida for abducting a women at knife point. (3T. at 427). Appellant's DNA has also been found in a case involving a fifteen year old girl in Canton, Ohio in which she alleges appellant forced her into a wooded area using box cutters as a weapon and raped her. (3T. at 407-412). In one Florida case, appellant put a knife to a woman's throat and told her "you're coming with me". (Id. at 324-325). The woman was able to escape and appellant was apprehended shortly after the attack. Appellant was found to be in possession of a black utility knife. (Id. at 403-406).
 {¶ 81} In a second case originating in Florida, appellant allegedly approached a married couple on a beach with either a knife or a gun concealed under a towel. (3T. at 411-12). Appellant allegedly walked the couple to an abandoned building and forced the husband to watch as appellant allegedly raped the wife. (Id.). Appellant's DNA was found to be present in that case. (Id.).
 {¶ 82} Upon review, we find that the trial court's finding was supported by competent, credible evidence.
 {¶ 83} Appellant's Fourth Assignment of Error is overruled.
 {¶ 84} For the foregoing reasons the judgments of the Stark County Court of Common Pleas are affirmed.
By Gwin, P.J., Hoffman, J., and Wise, J., concur.
For the reasons stated in our accompanying Memorandum-Opinion, the judgments of the Stark County Court of Common Pleas are affirmed. Costs to appellant.